IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| MAI LARSEN DESIGNS, | § | | |
| | § | | |
| *Plaintiff,* | § | | |
| | § | | CIVIL NO. |
| vs. | § | | SA-17-CV-1084-ESC |
| | § | | |
| WANT2SCRAP, LLC, MICHELLE | § | | |
| PARRISH,  CREATIVE SCRAP | § | | |
| DESIGNS, | § | | |
| | § | | |
| *Defendants.* | § | | |

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS
## AND MOTIONS FOR SUMMARY JUDGMENT

Before the Court in the above-styled cause of action are the following four dispositive motions:  Defendants Wants2Scrap, LLC and Michele Parrish's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [#58], Defendants Wants2Scrap, LLC and Michele Parrish's Motion for Summary Judgment [#61], Plaintiff and Counter-Defendants' Motion for Partial Summary Judgment or Alternatively to Exclude Evidence [#62], and Defendants Wants2Scrap, LLC and Michele Parrish's Supplemental Motion for Summary Judgment [#96]. In reviewing these motions, the Court has also considered the numerous responses and replies on file pertaining to the motions [#59, #66, #72, #80, #83, #86, #88, #89, #94, #95, #97, #98, #99]. The undersigned has authority to enter this Order as all parties have consented to the jurisdiction of a United States Magistrate Judge [#17, #18].  *See* 28 U.S.C. § 636(c)(1).  For the reasons set forth below, the Court will (1) grant Defendants' Supplemental Motion for Summary Judgment and dismiss Plaintiff's copyright claim for failure to obtain a copyright registration prior to filing suit; (2) order Defendants to show cause as to why their counterclaims for a declaratory judgment of non-infringement and claims of copyright infringement and breach of contract should not be dismissed *sua sponte* along with Plaintiff's copyright claim; (3) grant in part

1

Defendants' motion for judgment on the pleadings and dismiss Plaintiff's conversion claim as preempted by the Copyright Act; (4) grant in part Defendants' motion for summary judgment on Plaintiff's fraud and Texas Free Enterprise and Antitrust Act claims; and (5) hold in abeyance Plaintiff's and Counter-Defendants' motion for partial summary judgment while the Court considers whether to dismiss Defendants' counterclaims *sua sponte* after receiving Defendants' show cause response.

## I.  Procedural Background

The procedural history of this case begins on October 24, 2017 in the Northern District of Indiana, where Defendant Want2Scrap, LLC filed suit seeking a declaration of non-infringement of copyright and asserting claims of breach of contract, copyright infringement, and other torts against Mabel Larsen and the two unincorporated entities through which she conducts business—Mai Larsen Designs and Creative Scrap Designs.  The following day, Mai Larsen Designs filed this action against Want2Scrap and its owner Michele Parrish, asserting claims of copyright infringement, fraud, and theft by conversion in this district.  (Orig. Compl. [#1].)  The Indiana court transferred the Indiana case to this division, where it was assigned the cause number 5:18-CV-321-OLG. Following the transfer, the Court consolidated the Texas and Indiana cases and designated cause number 5:17-CV-1084-OLG as the lead case.  (Consolidation Order [#14].)

Plaintiff Mai Larsen Designs subsequently filed her First Amended Complaint [#15] in the lead case; the parties consented to the jurisdiction of a United States Magistrate Judge; and the consolidated action was transfered to the undersigned's docket on May 22, 2018 [#19].  The undersigned thereafter realigned the parties post-consolidation, designating Mai Larsen Designs

as Plaintiff (hereinafter "Larsen"),[1] Want2Scrap and Michele Parrish as Defendants/Counter-Plaintiffs (hereinafter "Defendants"), and Mabel Larsen, Creative Scrap Designs, and Mai Larsen Designs ("the Larsen Parties") as Counter-Defendants [#31].

The Court denied Defendants' motion to dismiss Plaintiff's First Amended Complaint [#28], and Larsen filed a Second Amended Complaint on December 12, 2018 [#41], again asserting claims of copyright infringement (Count I), fraud (Count II), fraud in the inducement (Count III), theft by deception and conversion (Count IV), and conspiracy and unfair competition in violation of the Texas Free Enterprise and Antitrust Act (Counts V and VI).  Larsen's Second Amended Complaint alleges that Mai Larsen Designs is a designer of chipboard embellishment and craft designs for use in homemade scrapbooks that are original works that may be copyrighted under federal law.  (Second Am. Compl. [#41] at ¶ 4.)  Larsen accuses Defendants of infringing its copyrights by: selling her designs on Want2Scrap's website, at trade shows, and directly to retailers; failing to compensate Larsen for her designs as promised in an oral agreement between the parties; and harassing Larsen on social media to prevent her from competing with Want2Scrap in the sale of scrapbook designs and chipboard products.  (*Id.* at ¶¶ 4–9.)

In response, Defendants filed Counterclaims on December 26, 2018 [#42], seeking a declaratory judgment of non-infringement of copyright against the Larsen Parties (Count I); alleging a claim of breach of contract against Larsen (Count II); and asserting claims against the Larsen Parties for copyright infringement (Count III), tortious interference with business relations (Count IV), unfair competition (Count V), inducing copyright infringement (Count VI),

---

[1] The Court refers to Plaintiff as "Larsen" throughout this Order, as she is functionally the Plaintiff in this action because her entities are not registered with the State of Texas and she is the only individual associated with these assumed names.  (Pl.'s Resp. [#94] at 3.)

and defamation (Count VII).  Defendants allege that Want2Scrap and Larsen entered into a copyright license agreement whereby Want2Scrap was granted an exclusive license to Larsen's artwork that allowed Defendants to use all of the works at issue in this lawsuit.  (Counterclaim [#42] at ¶ 73.)  Defendants contend that Want2Scrap fullfilled all of its obligations under the copyright license agreement, but Larsen breached her contractual duties by advertising, selling, or distributing works substantially similar to the licensed works without Want2Scrap's permission.  (*Id.* at ¶¶ 137–38.)  Defendants further allege that the Larsen Parties made false and misleading statements about Want2Scrap to its prospective customers and publicized false statements harmful to the interests of Want2Scrap.  (*Id.* at ¶¶ 148, 163.)

Defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) on March 7, 2019 [#58], arguing that Larsen's fraud, conversion, and unfair competition claims are all preempted by the Copyright Act and must be dismissed.  Defendants thereafter filed a motion for summary judgment on March 14, 2019 [#61], arguing that Larsen's copyright claims fail as a matter of law because the parties' copyright license agreement operates as a complete defense to copyright infringement; there is no evidence of any oral agreement to compensate Larsen for its designs; and Larsen fails to allege an antitrust injury under the Texas Free Enterprise and Antitrust Act.  The Larsen Parties filed a Motion for Partial Summary Judgment on the same day [#62], arguing that the identified copyright license agreement is unenforceable and seeking summary judgment on all of Defendants' counterclaims that are based on the agreement (the request for declaratory judgment and claims for breach of contract, copyright infringement, and inducing copyright infringement) or, alternatively, seeking an order excluding the agreement from evidence admitted at trial.

The Court held a pretrial status conference in this case on April 24, 2019, at which it heard argument on these three dispositive motions.  At the close of the hearing, Defendants' counsel alerted the Court to a recent Supreme Court decision, *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, --U.S.--, 139 S. Ct. 81 (2019), which interprets the Copyright Act's statutory preconditions to filing a civil suit under the Act.  The Court ordered briefing on the impacts, if any, of *Fourth Estate* on the instant case.  In response, Defendants filed their supplemental motion for summary judgment [#96] on May 2, 2019, which argues that Larsen's copyright claims must be dismissed for failure to obtain registered copyrights prior to instituting this lawsuit.  All four dispositive motions are ripe for the Court's resolution.

## II.  Legal Standards

### A.     Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The

allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Twombly*, 550 U.S. at 570.

**B.    Summary Judgment**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.

1995).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.  However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III.  Analysis

The Court will grant Defendants' supplemental motion for summary judgment and dismiss Larsen's claim for copyright infringement for failure to obtain a copyright registration prior to filing this lawsuit.  The Court will also (1) grant in part Defendants' motion for judgment on the pleadings and dismiss Larsen's conversion claim as preempted under the Copyright Act and (2) grant in part Defendants' motion for summary judgment as to Larsen's claims of fraud and claims under the Texas Free Enterprise and Antitrust Act.  These rulings result in the dismissal of all of the claims asserted by Larsen in her Second Amended Complaint.

As to Defendants' counterclaims, the Court will hold in abeyance Plaintiff's partial motion for summary judgment while the Court considers whether to dismiss Defendants' request for declaratory judgment of non-infringement and counterclaims of copyright infringement and

breach of contract *sua sponte* along with Larsen's copyright infringement claim in light of the Supreme Court's decision in *Fourth Estate*.

## A.      Defendants' Supplemental Motion for Summary Judgment [#96]

Defendants seek dismissal of Larsen's claim of copyright infringement (Count I of the Second Amended Complaint) on the basis that Plaintiff failed to satisfy the statutory precondition to bringing suit under the Copyright Act as interpreted by the Supreme Court's recent decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, --U.S.--, 139 S. Ct. 881 (2019).   The Court agrees with Defendants that *Fourth Estate* requires dismissal of Larsen's copyright infringement claim.

The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."   17 U.S.C. § 411(a).   On March 4, 2019, the Supreme Court issued its decision in *Fourth Estate*, which held that "registration . . . has been made" within the meaning of Section 411(a) when the Register of Copyrights "has registered a copyright after examining a properly filed application."[2]   139 S. Ct. at 892.   This decision resolved a split in the Circuit Courts of Appeals and rejected the interpretation of the Fifth and Ninth Circuits, which had previously held that registration has been made under Section 411(a) when the copyright claimant's complete application for registration is received by the Copyright Office.   *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 621 (9th Cir. 2010); *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991).

---

[2]   The Supreme Court explained that "[i]n limited circumstances, copyright owners may file an infringement suit before undertaking registration. If a copyright owner is preparing to distribute a work of a type vulnerable to predistribution infringement—notably, a movie or musical composition—the owner may apply for preregistration."   *Fourth Estate Pub. Benefit Corp.*, 139 S. Ct. at 888.   No party is asserting that this limited circumstance applies here.

"Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010).  "[A]lthough an owner's rights exist apart from registration, . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights . . . ." *Fourth Estate Public Benefit Corp.*, 139 S. Ct. at 887.  In the wake of *Fourth Estate*, district courts have dismissed copyright claims based on this administrative requirement, even if the suit was properly filed before *Fourth Estate* was decided, under Circuit law embracing the application approach, as here.  *See, e.g.*, *Boost Beauty, LLC. v. Woo Signatures, LLC.*, No. 2:18-CV-02960-CAS-EX, 2019 WL 2122984, at *2 (C.D. Cal. May 14, 2019) (granting motion for judgment on the pleadings for failure to obtain registration of copyright for online advertisement which was subject of copyright claims).

Larsen instituted this suit on October 25, 2017 by filing an Original Complaint, which alleged that Larsen applied for copyright registrations with the United States Copyright Office in July 2017 and that the certificates of registration remained "pending."  (Orig. Compl. [#1] at ¶ 2.)  Larsen's First Amended Complaint was filed on April 25, 2018.  This Complaint again stated that Larsen had applied for copyright protection in June 2017 but the applications still remained "pending."  (First Am. Compl. [#15] at ¶ 4.)  Larsen filed a Second Amended Complaint on December 12, 2018.  This Complaint alleged that certificates of registration had been issued and were effective as of August 18, 2017, the date of application.[3]  (Second Am. Compl. [#41] at ¶ 4.)  The registrations were not attached to the Complaint, but Larsen provided the Court with two copyright registrations as part of her summary judgment evidence.  (Certificate of Registration [#95-1]; Certificate of Registration [#95-2].)

---

[3] Copyright registrations, once approved, are retroactively effective from the date the application was filed.  17 U.S.C. § 410(d).

The summary judgment record demonstrates that these two registrations award a certificate to Mabel Mai Larsen for hand drawn art, Registration Number VAu 1-184-921, with an effective date of August 7, 2014 [#95-1] and for 2-D artwork, Registration Number VAu 1-319-215, with an effective date of August 18, 2017 [#95-2].  The registrations do not indicate the date the applications were processed.  The Court extrapolates from Larsen's pleadings, however, that the 2017 registration was processed and awarded sometime between April 25, 2018 (when the First Amended Complaint was filed) and December 12, 2018 (when the Second Amended Complaint was filed).

Larsen argues that it complied with Section 411(a)'s registration requirement because its copyright registrations were made effective on August 7, 2014 and August 18, 2017, before she filed suit on October 25, 2017.  (Summ. J. Resp. [#97].)  As a preliminary matter, the Court finds that the 2014 registration is not relevant to this suit.  This registration is not referenced in any of Larsen's pleadings, nor are the 2014 copyrighted works.  Rather, Larsen has repeatedly referred to Exhibit A to the Original and First and Second Amended Complaints as the works at issue in this lawsuit.  (Orig. Compl. [#1] at ¶ 4; First Am. Compl. [#15] at ¶ 4; Second Am. Compl. [#41] at ¶ 4.)  Exhibit A is a chart of the 2-D chipboard designs submitted to the Copyright Office on July 28, 2017 and August 18, 2017.[4]  (Ex. A [#1] at 6–13; Ex. A [#15] at 7–18.)  The drawings protected by the 2014 copyright registration are not chipboard designs; they are hand sketches of doll figures.  (2014 Application [#95-3] at 12–47.)  Larsen now attempts to argue that "several of [Larsen's] earlier drawings were her inspiration for later developed designs that Defendants have infringed."  (Brief at 3.)  This assertion is irrelevant, however, as Larsen has never claimed that

---

[4]  Larsen explains in her briefing that she submitted an additional application to the Copyright Office on July 28, 2017 but has still not received a certificate of registration or a rejection notification regarding this application.  (Pl.'s Brief [#95] at 3.)  Larsen believes the application was closed or suspended due to an unknown administrative error.  (*Id.*)

Defendants have infringed upon the works protected by the 2014 registration.  Accordingly, the 2014 registration has no bearing on her claim of copyright infringement in this lawsuit.

As to the 2017 registration, Larsen does not disclose to the Court the date on which she received notice that the registrations had been awarded.  She simply argues the effective date of the registration predates the filing of this lawsuit, and therefore she satisfied the administrative preconditions to suit under the Copyright Act.  To adopt Larsen's reasoning the Court would have to hold that *Fourth Estate* allows a plaintiff to file a lawsuit before copyright registrations have been awarded and to amend the pleadings after registration is obtained, so long as the effective date (i.e., the date of application) predates the filing of the lawsuit.  The Court cannot square this argument with the holding of *Fourth Estate*, and Larsen's argument has been directly rejected by at least one federal district court since the Supreme Court issued its decision.

In *Malibu Media, LLC v. Doe*, the Southern District of New York addressed the issue of "whether a plaintiff that improperly filed suit before a copyright was registered can cure that defect by amending its complaint after the Register has completed registration of the copyright." No. 18-CV-10956 (JMF), 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019).  The Court held that "such a prematurely filed suit must be dismissed notwithstanding a plaintiff's post-registration amendment." *Id.*  The Court agrees with the Southern District of New York that embracing the argument advanced by Larsen "would make a meaningless formality out of *Fourth Estate*'s requirement that an application be approved prior to filing suit." *Id.* at *2. Because Larsen's pleadings do not comply with Section 411(a)'s pre-suit registration

11

requirement, the Court will dismiss Larsen's claim of copyright infringement (Count I of the Second Amended Complaint).[5]

Finally, although not addressed in any party's filings, the Court suspects that Defendants' counterclaims for a declaratory judgment of non-infringement (Count I), breach of contract (Count II), copyright infringement (Count III), and inducing copyright infringement (Count VI) should also be dismissed under *Fourth Estate*.  The precondition of copyright registration applies with equal force to declaratory judgment actions of copyright non-infringement.  *See BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *4 (S.D. Tex. Mar. 29, 2016), *modified on reconsideration*, No. 4:15-CV-00627, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) (collecting cases).  The other listed counterclaims are all various iterations of Defendants' allegation that the Larsen Parties infringed their copyright to use Larsen's designs based on an enforceable transfer of copyright ownership through the parties' license agreement. (Counterclaims [#42] at ¶¶ 133–146, 157–161.)  However, the Court will give Defendants an opportunity to show cause as to why these claims should not be dismissed under the reasoning of *Fourth Estate* before dismissing these claims *sua sponte*.  *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) ("[A] district court may only dismiss a case *sua sponte* after giving the

---

[5] In light of this holding, the Court need not and will not address Defendants' alternative arguments for summary judgment on Larsen's copyright claim related to their affirmative defense of a copyright license agreement between the parties governing Larsen's work at issue. However, the Court will note that it appears that the agreement attached to Defendants' answer and counterclaims, which was signed by Larsen on January 30, 2017, is enforceable. (Copyright License Agreement [#42-1] at 2–4.)  The agreement grants Want2Scrap "an exclusive, transferable license to use [Larsen's] work in the course of its business." (*Id.*)  The arguments raised by Larsen to support her contention that the agreement is invalid, such as her argument the agreement is invalid because it lacks Parrish's signature, do not appear to be supported by Texas or Indiana law (regardless of which applies) or the Copyright Act.

[party] notice of the perceived inadequacy of the complaint and an opportunity for the [party] to respond.").

**B.      Defendants' Motion for Judgment on the Pleadings [#58]**

Defendants move to dismiss all of the state-law claims in Larsen's Second Amended Complaint as preempted by the Copyright Act.  The Court holds that Larsen's conversion claim is preempted and must be dismissed with prejudice.  Larsen's claims of fraud, fraud in the inducement, and conspiracy and unfair competition under the Texas Free Enterprise and Antitrust Act, however, are not preempted.

The Copyright Act provides:

> all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title . . . .

17 U.S.C. § 301(a).  This provision has been interpreted as expressly preempting all causes of action falling within the scope of the Copyright Act, thereby accomplishing "the general federal policy of creating a uniform method for protecting and enforcing certain rights in intellectual property by preempting other claims."  *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995).

Courts have interpreted the provision as containing a two-step test for preemption.  *Id.* at 288–89.  First, the cause of action is examined to determine if it falls "within the subject matter of copyright."  *Id.* at 289; *see, e.g.*, *Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) (tort claim of misappropriation did not fall under subject of copyright where misappropriation concerned name or likeness, which were non-copyrightable).  Second, the cause of action is examined to determine if it protects rights that are "equivalent" to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106, which grants the holder of a copyright the exclusive

right to reproduce, distribute, perform, and display the copyrighted work. *Daboub*, 42 F.3d at 289. The analysis required at this step is more complex. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999).

The Fifth Circuit evaluates equivalency through the "extra element" test. *Id.* According to this test, if the act or acts about which a plaintiff complains would violate both state law and copyright law, then the state right is deemed "equivalent to copyright." *Id.* "If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (internal quotation omitted).

     i.     Conversion (Count IV)

Larsen's conversion claim alleges that Defendants wrongfully converted Larsen's designs for their own illegal use and benefit. (Second Am. Compl. [#41] at ¶ 8.) This claim concerns the same material that is underlying Laren's infringement claim—Larsen's chipboard designs. This material is subject to copyright protection and therefore falls "within the subject matter of copyright." *See Daboub*, 42 F.3d at 289. The conversion claim also protects rights that are "equivalent" to the exclusive rights of federal copyright. *See id.* The elements of a conversion claim under Texas law are: (1) the plaintiff's legal possession or entitlement to property; (2) defendant's wrongful exercise of dominion and control over the property, excluding the plaintiff; (3) plaintiff's demand of the property's return; and (4) defendant's refusal. *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). Because there is no qualitatively different element that would remove the conversion claim from the scope of the Copyright Act's preemption provision, this claim should be dismissed with prejudice as preempted. *See Daboub*, 42 F.3d at 289.

ii.    Fraud and Fraudulent Inducement (Counts II and III)

Larsen's fraud claims are not preempted.  Larsen alleges that Parrish made numerous representations to Larsen that Larsen would be compensated for Defendants' sale of her designs but that Larsen only ever received $350.00 per month for development of Defendants' social media and YouTube presence pursuant to a separate oral agreement between the parties. (Second Am. Compl. [#41] at ¶¶ 6–7.)  Larsen claims she would not have agreed to submit her designs to Defendants but for Defendants' misrepresentations about the additional compensation. (*Id.* at ¶ 7.)  Larsen conceded at the Court's April 24, 2019 pretrial status conference that these fraud claims are related to the question of whether there is a valid copyright license agreement between the parties.  The Court therefore finds that these particular fraud claims fall within the subject matter of copyright—step one of this Court's preemption inquiry—because they concern whether Larsen's copyrightable designs were distributed by Defendants illegally and without proper compensation to Larsen.  *See Daboub*, 42 F.3d at 289.

However, the fraud claims fail the second step of the Court's preemption inquiry—the extra element test.  The Fifth Circuit has held that claims requiring proof of fraud or misrepresentation are generally not preempted by the Copyright Act because they involve the extra element of a statement or misrepresentation that induced specific reliance and caused damages that are not attributable to copyright infringement.  *See Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404–05 (5th Cir. 2000) (Louisiana Unfair Trade Practices Act is not preempted by Copyright Act because it requires proof of fraud, misrepresentation, or unethical conduct); *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 779 (E.D. Tex. 2006) (summarily concluding that fraud and negligent misrepresentation claims were not preempted by Copyright Act under Fifth Circuit law) (quoting *Computer Mgmt. Assistance Co.*,

220 F.3d at 404–05).  Indeed,  Larsen's fraud claims require proof of a (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  Larsen's fraud claims fail for other reasons, *see infra*, but the Court declines to find these claims preempted in light of the alleged misrepresentations by Defendants, which are acts above and beyond their alleged infringement.

    iii.    Texas Free Enterprise and Antitrust Act Claims (Counts V and VI)

Larsen's conspiracy and unfair competition claims under the Texas Free Enterprise and Antitrust Act are also not preempted.  Larsen alleges that Parrish and her staff conspired with other named individuals to attack and defame Larsen on social media in order to prevent her from competing with Want2Scrap in the market for the sale of scrapbook designs and chipboard products.  (Second Am. Compl. [#41] at ¶ 9.)  A claim under the Texas Free Enterprise and Antitrust Act requires Larsen to prove that Defendants engaged in an illegal act that interfered with its ability to conduct its business.  *See Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 734 (N.D. Tex. 2004).  "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort."  *Id.*  Here the focus is on alleged defamatory conduct of Defendants.  This cause of action does not fall "within the subject matter of copyright" but instead addresses independent allegations of wrongdoing surrounding Defendants' and others' behavior on social media.  *See Daboub*, 42 F.3d at 289.  Accordingly, Larsen's claims under the Texas Free Enterprise and Antitrust Act are not preempted by the Copyright Act.

**C.   Defendants' Motion for Summary Judgment [#61]**

Defendants alternatively move for summary judgment on all of Larsen's claims on the basis that Larsen cannot prove these claims as a matter of law.   The Court has already determined Larsen's copyright infringement claim should be dismissed for failure to obtain a registration prior to filing this suit and Larsen's conversion claim is preempted by the Copyright Act.   Accordingly, the Court only considers whether Larsen's claims of fraud, fraudulent inducement, conspiracy, and unfair competition should be dismissed because no genuine dispute of material fact exists as to these claims such that Defendants are entitled to judgment as a matter of law.   Defendants are entitled to summary judgment on these claims.

   i.       Fraud and Fraudulent Inducement (Counts II and III)

As previously stated, Larsen's fraud claims allege that Parrish made numerous representations to Larsen that she would be compensated for Defendants' sale of her designs but that Larsen only ever received $350.00 per month for development of Defendants' social media and YouTube presence pursuant to a separate oral agreement between the parties.   (Second Am. Compl. [#41] at ¶¶ 6–7.)   Larsen claims she would not have agreed to submit her designs to Defendants but for Defendants' misrepresentations.   (*Id.* at ¶ 7.)   Defendants argue they are entitled to judgment as a matter of law on Larsen's claims of fraud because Larsen has failed to come forth with any evidence to show that Parrish made an oral promise to compensate Larsen for the designs beyond the compensation that has already been received.

Again, to prevail on her claim of fraud, Larsen must prove that (1) Defendants made a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which Larsen relied; and (5) which proximately caused Larsen's injuries. *See Williams*, 112 F.3d at 177.   A claim of fraudulent inducement shares the same elements as a claim of fraud but with the

additional requirement of an agreement between the parties, as the fraud arises only in the context of a contract.  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012).  Although Larsen does not reference the copyright license agreement in her pleadings, in her response to Defendants' motion for summary judgment, she states that her claim of fraud in the inducement rests on the allegation that Defendants fraudulently induced Larsen into signing a royalty free, exclusive copyright license agreement under duress.  (Summ. J. Resp. [#94] at 2.)  The Court agrees with Defendants that Larsen has failed to carry her burden to come forth with specific evidence establishing a genuine issue for trial as to these claims.

First and foremost, Larsen has not identified a misstatement of material fact by Parrish to support her fraud claims, regardless of whether or not the copyright license agreement is valid. Under Texas law, a "material" fact is one to which "a reasonable person would attach importance" and "would be induced to act on the information in determining his choice of actions in the transaction in question."  *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 474 (5th Cir. 2018).  To constitute actionable fraud, false representations must relate to material facts, as distinguished from matters of opinion, judgment, probability, or expectation.  *GMAC Commercial Mortg. Corp. v. E. Texas Holdings, Inc.*, 441 F. Supp. 2d 801, 806 (E.D. Tex. 2006); *see also See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) ("[A] pure expression of opinion will not support an action for fraud.").

The only statements identified by Larsen in her summary judgment response are allegations of a vague promise by Parrish that "Larsen would prosper as Want2Scrap and Parrish prospered" and a January 2017 representation that Parrish "would financially compensate Larsen for her designs."  (Summ. J. Resp. [#94] at 4, 9.)  Larsen does not attach any evidence to her response to Defendants' motion for summary judgment to support these allegations—no

deposition testimony, documents, affidavits, declarations—so as to raise a genuine issue for trial as to whether these statements were made, whether they were material, and whether they were false.[6]  On this basis alone, the Court should grant Defendants' summary judgment on these claims.

Yet the summary judgment evidence submitted by Defendants—which is uncontroverted by Larsen—further establishes that Parrish did not make any specific promise to compensate Larsen.  Parrish's declaration states that she never made any oral or written promise to pay Larsen for submitting her designs to Want2Scrap; that she offered to pay Larsen $5 for each kit sold and that she paid those amounts; and that her generalized statements regarding making more money referred to the sale of Larsen's kits and nothing more.  (Parrish Decl. [#61-1] at 19–20.)  The correspondence between the parties in the record supports Parrish's declaration.  Again, Larsen has not presented the Court with any evidence of a promise to pay her for her designs.  Text messages submitted to the Court by Defendant confirm that Parrish only made statements such as, "If I make more money, you make more money!"  (Jan. 10, 2017 Text Message [#61-1] at 225).  Moreover, when Parrish suggested Larsen receive a commission, Larsen declined and refused Parrish's offers of payment on several other occasions.  (Jan. 10, 2017 Text Message [#61-1] at 228 ("nah I'm good I get gratification of seeing them create."); *id.* at 229 ("I don't need the money. I design for you remember."); *id.* at 231 ("I'm not worried about commission."); *id.* at 232 ("I don't need money for it hun."); April 4, 2017 Text Message [#61-1] at 233 ("No remember I said no more paying Hun.").)  Additionally, Larsen admitted in her deposition that she was paid for some kit designs and when Larsen asked for payment in May

---

[6] Larsen did, however, attach an affidavit to her own motion for partial summary judgment, in which she simply reiterates that Parrish repeatedly told Larsen she would prosper from their relationship.  (Larsen Decl. [#62-1] at ¶ 5.)

2017 and sent an invoice for outstanding expenses, Parrish paid her that amount. (Larsen Dep. [#61-1] at 72:9–13 ("She insisted on paying for that."); *id.* at 67:7–15, 145:3–18.) Larsen also admits she received additional payments for her work for Parrish in February and March 2017 over and above the $350 she was paid each month for social media development. (Larsen Dep. [#61-1] at 143:4–144:10, 147:6–15.) In light of this evidence and Larsen's failure to proffer evidence demonstrating a material misrepresentation by Parrish, Larsen cannot prove her allegations to the contrary.

### ii.     Texas Free Enterprise and Antitrust Act Claims (Counts V and VI)

Larsen's conspiracy and unfair competition claims under the Texas Free Enterprise and Antitrust Act allege that Parrish and her staff conspired with other named individuals to attack and defame Larsen on social media in order to prevent her from competing with Want2Scrap in the market for the sale of scrapbook designs and chipboard products. (Second Am. Compl. [#41] at ¶ 9.) Defendants argue Larsen lacks standing to sue them under the Texas Free Enterprise and Antitrust Act and therefore they are entitled to judgment as a matter of law on her conspiracy and unfair competition claims. The Court agrees.

The Texas Free Enterprise and Antitrust Act of 1983 ("Texas Antitrust Act"), codified at Texas Business and Commerce Code § 15.01, *et seq.*, has the stated purpose of "maintain[ing] and promot[ing] economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the state." Tex. Bus. & Comm. Code § 15.04. The Texas Antitrust Act grants a private right of action to bring suit to persons "whose business or property has been injured by reason of anything declared unlawful" in the Act. *Id.* at § 15.21(b). It is unlawful under the Act for "any person to

monopolize, attempt to monopolize, or conspire to monopolize any part of trade or commerce." *Id.* at § 15.05(b).

Antitrust law imposes a threshold standing requirement upon persons seeking liability for antitrust violations, which involves more than the "case or controversy" requirement underlying constitutional standing.  *McPeters v. LexisNexis*, 11 F. Supp. 3d 789, 797 (S.D. Tex. 2014) (collecting Texas case law); *Marlin v. Robertson*, 307 S.W.3d 418, 424 (Tex. App.—San Antonio 2009, no pet.)  Whether a given plaintiff is the proper individual to bring an antitrust claim is a question of law and exist if the plaintiff shows the following: (1) injury-in-fact, which is an injury to the plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit. *Marlin*, 307 S.W.3d at 424 (citing *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir. 1997)).

An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (internal quotation omitted).  "The injury should reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 498 (1977).  "[I]njury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny. . . ." *Atl. Richfield Co.*, 495 U.S. at 334 (internal quotation omitted).  "On its own, the elimination of a single competitor" is not sufficient to state an antitrust injury; a plaintiff must "plead . . . a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 709 (Tex. 2015)

(internal quotation omitted).  Allegations surrounding the removal of a single competitor must also suggest that this act "would adversely and unreasonably affect overall competitive conditions."  *Id.* at 710 (internal quotation omitted).

Larsen has not alleged an antitrust injury sufficient to establish her standing under the Texas Antitrust Act.  Larsen claims that Parrish and various third parties targeted Larsen on social media in an attempt to prevent her from competing with Want2Scrap in the scrap book design market by "leaving nasty messages" about Larsen and "putting thumbs down" on Larsen's YouTube channel in response to her postings.  (Second Am. Compl. [#41] at ¶ 9; Larsen Dep. [#61-1] at 94:10–15.)  According to Larsen, these attacks were personal and concerned her family and her religion.  (Resp. [#94] at 5.)  Larsen alleges that she was eliminated from the crafting market due to this harassment and that Defendants have made other defamatory remarks about all crafters they believe to be their competitors in order to monopolize the scrap book design market.  (Second Am. Compl. [#41] at ¶ 9.)

Yet the summary judgment evidence establishes that Larsen has not in fact been eliminated from the crafting market; rather, Larsen admitted in her deposition that she is still selling her designs for royalty payments through various websites that are still a part of the crafting market.    (Larsen Dep. [#61-1] at 92:11–93:4.)  Defendants submitted to the Court copies of these websites, which include Larsen's Creative Scrap Designs website, a British site entitled "Fernli Designs," and weCraft.com.   (Fernli Designs Website [#61-1] at 210–12; Creative Scrap Designs Website [#61-1] at 213–17; weCraft Website [#61-1] at 298–47.)  Larsen clarified in her deposition that the market exclusion she alleges through her Texas Antitrust Act claims is the loss of her YouTube channel, where she posted instructional videos on crafting, rather than exclusion from the scrap book market in its entirety.  (Larsen Dep. [#61-1] at 93:1–

4.)  Larsen claims that she was forced to close her YouTube account due to the harassing behavior of Defendants and as a result she lost over 6,000 followers of her channel.  (*Id.*)

Larsen's decision to close her YouTube channel, which is not in itself a commercial site, does not constitute an antitrust injury because Larsen fails to explain how Defendants' harassment of Larsen "adversely and unreasonably affect[ed] overall competitive conditions" in the scrap book design market.  *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 709.  Again, the purpose of the Texas Antitrust Act is to protect *consumers* from the monopolization of any part of trade or commerce.  Tex. Bus. & Comm. Code § 15.05(b).  Larsen has failed to allege how Defendants' and others' personal attacks of Larsen on social media reduced competition in the market in general beyond merely damaging her own reputation within the scrap book and crafting community.  *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 709.  Larsen lacks standing to assert her claim under the Texas Antitrust Act because she has failed to allege an antitrust injury.

**D.     The Larsen Parties' Motion for Partial Summary Judgment [#62]**

The Larsen Parties seek a partial summary judgment on Defendants' counterclaims and defenses relating to the copyright license agreement identified by Defendants.  The Larsen Parties contend that the copyright license agreement is invalid and unenforceable and therefore cannot serve as a basis for Defendants' requested declaratory judgment of non-infringement or claims of breach of contract, copyright infringement, or inducing copyright infringement.  As previously explained, the Court will order Defendants to show cause as to why these counterclaims should not be dismissed *sua sponte* along with Larsen's copyright infringement claim for failure to first obtain a copyright registration before filing suit as required by Section 411(a) of the Copyright Act.  The Court will therefore hold in abeyance the Larsen Parties'

motion for partial summary judgment while the Court awaits Defendants' show cause response. If the Court determines that these counterclaims should be dismissed, the Court will also dismiss the motion for partial summary judgment as moot. If the Court retains these counterclaims, it will issue a ruling on the Larsen Parties' motion.

### IV. Conclusion

Having considered the parties' dispositive motions and the responses and replies thereto under the governing legal standards and in light of the record before the Court, the Court will grant Defendants' supplemental motion for summary judgment; order Defendants to show cause as to why the Court should not *sua sponte* dismiss their counterclaims for a declaratory judgment of non-infringement, copyright infringement, and breach of contract; grant in part Defendants' motion for judgment on the pleadings; grant in part Defendants' motion for summary judgment, and hold in abeyance the Larsen Parties' motion for partial summary judgment.

**IT IS THEREFORE ORDERED** that Defendants Wants2Scrap, LLC and Michele Parrish's Supplemental Motion for Summary Judgment [#96] is **GRANTED**. Larsen's claim of copyright infringement (Count I) is **DISMISSED WITHOUT PREJUDICE** for failure to obtain a copyright registration prior to filing suit.

**IT IS FURTHER ORDERED** that Defendants **SHOW CAUSE** why their counterclaims for a declaratory judgment of non-infringement, claims of copyright infringement, inducing copyright infringement, and breach of contract should not be dismissed along with Larsen's copyright infringement claim in light of the Supreme Court's holding in *Fourth Estate Public Benefit Corp. V. Wall-Street.com, LLC*, 139 S. Ct. 81 (2019), within **seven days of this Order**.

**IT IS FURTHER ORDERED** that Defendants Wants2Scrap, LLC and Michele Parrish's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [#58] is **GRANTED IN PART**.  Larsen's claim of conversion (Count IV) is **DISMISSED WITH PREJUDICE** as preempted by the Copyright Act.

**IT IS FURTHER ORDERED** that Defendants Wants2Scrap, LLC and Michele Parrish's Motion for Summary Judgment [#61] is **GRANTED IN PART**.  Larsen's claims of fraud, fraudulent inducement, and conspiracy and unfair competition under the Texas Free Enterprise and Antitrust Act (Counts II, III, V, and VI) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff and Counter-Defendants' Motion for Partial Summary Judgment or Alternatively to Exclude Evidence [#62] is **HELD IN ABEYANCE** pending Defendants' response to the Court's order to show cause.

**IT IS FINALLY ORDERED** that in all other respects, the motions are **DENIED**.

SIGNED this 3rd day of June, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE